1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10     UNITED STATES OF AMERICA,

11                   Plaintiff,

12       v.

13     MILLER STEVENS,

14                 Defendant.

CASE NO. 3:11-cr-05183-RBL

ORDER OF DETENTION

15

16       This Court conducted a detention hearing on Monday, April 11, 2011 pursuant to 18

17 U.S.C. §3142.  The United States of America was represented by Jerrod C. Patterson.  The

18 defendant was present and represented by his attorney, Alan Overland.  Also present was

19 Michael Markham, U.S. Pretrial Services Officer.

20       This Court finds that no condition or combination of conditions which defendant can

21 meet will reasonably assure the appearance of the defendant as required.

22       The parties proceeded at the hearing by way of proffer and argument.  The court

23 considered the following written documents:  U.S. Pretrial Services Report, Motion for

24

1  Detention with attachment (ECF No. 25), the Indictment and the Declaration of Lisa Newell
2  (ECF No. 27).

3      The Government filed a Motion for Detention based on serious risk of flight.

4                                    **FINDINGS OF FACT**

5      The defendant is charged in a twenty-three count Indictment which includes charges of
6  Conspiracy to Commit Offenses against the United States (Count 1), Odometer Tampering
7  (Counts 2 – 11), False Odometer Statements (Counts 12 – 15), Counterfeit and Forged Securities
8  (Counts 16 – 23).  Count 1 carries a maximum penalty of five years in custody and a $250,000
9  fine; Counts 2 – 15 carry a maximum penalty, per count, of 3 years confinement and a $250,000
10 fine; Counts 16 – 23 carry a maximum penalty, per count, of 10 years confinement and a
11 $250,000 fine.

12     According to the information contained in the Pretrial Services Report prepared by Mr.
13 Markham, Mr. Stevens was interviewed by Pretrial Services in Oregon following his transfer to
14 federal custody from the State of Oregon.  Mr. Stevens was born in Tacoma, Washington where
15 he lived until 2004 when he relocated to Puyallup, Washington.  While the defendant is not
16 legally married, he and his partner (wife) have been together for 15 years, have three minor
17 children and they currently rent their home in Puyallup.  Mr. Stevens admitted to living in
18 Arizona for one year in 2000 and his wife noted that they also lived in California for eight
19 months approximately three years ago.

20     Mr. Stevens extended family lives in the Puyallup area.

21     According to Mr. Stevens, he has been self-employed for the past 12 years buying and
22 reselling used cars.  He supplements his income with seasonal employment doing landscaping.
23 He estimated a monthly income of $4,000.  The Defendant's wife, on the other hand, estimated
24 that Mr. Stevens had been buying and selling cars for 7 to 8 years.

1    Mr. Stevens advised the Pre-trial Services officer that his rent is $1700/month and that he

2  receives food stamps.  His wife clarified the information regarding the food stamps by stating

3  that she is the one who receives $330/month in food stamp assistance.

4    Mr. Stevens adult criminal history, under the name Miller Stevens, shows two Driving

5  While License Suspended 3rd Degree with a bail forfeiture.  He is currently pending charges in

6  Oregon of Theft of Identity, Possession of a Forged Instrument.  With regard to the pending

7  Oregon case (filed in Clackamas County) Mr. Stevens posted bail and was released into federal

8  custody on the warrant issued in this pending federal case.

9    With regard to the charges currently pending before this Court, the Indictment was signed

10  March 24, 2011 and the warrant for the arrest of Miller Stevens was entered into NCIC the

11  afternoon of March 30, 2011.  The federal agents anticipated executing the arrest warrants the

12  following day.  However, prior to the execution of the warrants an officer with the Washington

13  State Patrol arrested co-defendant Ricky Ristick.

14    On March 31, 2011 officers went to Miller Stevens home to execute the arrest warrant.

15  Agent Dan Stokke was told by Mr. Stevens wife that Mr. Stevens was not home and that he had

16  gone on an errand.  Agents noticed shoes at the front door which they believed belonged to Mr.

17  Stevens.  Detective Darrin Sugai was also present.  Mr. Stevens wife called Mr. Stevens on his

18  cell phone and permitted Detective Sugai to speak with Mr. Stevens.  Mr. Stevens agreed to meet

19  the officers at a specific location at 11:45 a.m.  The conversation between Det. Sugai and Mr.

20  Stevens took place around 11:30 a.m. so the inference created through this agreement was that

21  Mr. Stevens was very close by and willing to meet with the officers away from his home.  Mr.

22  Stevens never appeared at the agreed upon meeting place.

23    Instead, at about 2:00 p.m. Mr. Stevens checked into the Hampton Inn located in

24  Clackamas, Oregon under the name of Kurt Davis.  He also showed the innkeeper an Alaska

1   identification with that same name.  The identification appeared to the innkeeper to be fake.

2   Oregon officers confirmed, with the State of Alaska, that neither the name nor the ID number

3   were good.  The officers then went to the room of the Defendant.  Upon initial contact the

4   Defendant identified himself as Kurt Davis.  When he was asked to produce his Alaska

5   identification the Defendant was unable to find it.  After initially stating that he did not have his

6   wallet and stating that his other "friend" had the wallet, he was later able to find it and he then

7   produced Washington identification and a credit card with the name of Miller Stevens.  He

8   professed not to know where the Alaska identification card was.  The officers then checked to

9   see if there were any warrants and the warrants out of the Western District of Washington came

10  back.  Mr. Stevens was subsequently arrested.

11       Upon a search of the room the officers noted that there was nothing in the room other

12  than a red sweater that belonged to the other occupant of the room, co-defendant Bob Ristick.

13  There was no luggage or toiletries found.  An officer did locate the forged Alaska ID that had

14  been folded into fourths and stashed next to the air conditioner on the ledge next to the window.

15       According to the proffer through counsel Alan Overland, Mr. Stevens used the forged ID

16  because he knew from his wife's call and from his conversation with the officers that there were

17  pending federal charges.  According to the Declaration of Lisa Newell, the phone conversation

18  occurred "about 10:30 a.m. on March 31st."  He used the fake identification to prevent him from

19  being arrested on the federal charges before he could return home and turn himself in voluntarily.

20  According to the proffer, Mr. Stevens told the agent he could not get their right away and that he

21  started to return to Tacoma but he was not able to complete the trip due to a disabled vehicle.  It

22  was then that he pulled a block off the freeway and went to the hotel.  Mr. Stevens conceded the

23  details of his arrest in Oregon.  Mr. Stevens posted bail on the State of Oregon charge, was seen

24  by the U.S. Magistrate Judge in Portland and released to voluntarily return to Tacoma.

1

**REASONS FOR DETENTION**

2       The Government has the burden of proving by a preponderance of the evidence that Mr.

3   Stevens is a risk of flight and that there are no conditions or combination of conditions that can

4   ensure Mr. Stevens appearance in court as required.  AUSA Patterson acknowledged that two

5   other co-defendants were seen by the Court and they were not detained.  However, it was the

6   Government's position that the facts surrounding Mr. Stevens actions required detention.

7       The Court finds that the Government has met its burden.  The information before the

8   Court is that Mr. Stevens used fake identification to check into a hotel in Oregon at 2:00 after

9   having spoken with officers at 10:30 a.m. and agreeing to meet with them, in the Puyallup area,

10  in 15 minutes.  Mr. Stevens did not show up for the agreed upon meeting.  Rather, two and one-

11  half  hours later he checked into a hotel using a false name.  The Court concludes, based on the

12  evidence, that Mr. Stevens was attempting to flee because he knew of the warrant for his arrest.

13  Once he was contacted by the police in Oregon he continued to use his false name and tried to

14  hide the Alaska identification.

15      The Court concludes that the Government has shown a serious risk of flight.  And, based

16  on his actions in light of his knowledge of the warrants, the Court concludes that there are no

17  conditions or combination of conditions which would ensure Mr. Stevens appearance.

18      IT IS THEREFORE **ORDERED:**

19      (1)  The defendant shall be committed to the custody of the Attorney General for

20  confinement in a corrections facility separate, to the extent practicable, from persons awaiting or

21  serving sentences or being held in custody pending appeal.

22      (2)  The defendant shall be afforded reasonable opportunity for private consultation with

23  counsel.

24

1        (3)  The defendant shall on order of a court of the United States or on request of an

2    attorney for the Government, be delivered to a United States marshal for the purpose of an

3    appearance in connection with a court proceeding.

4        DATED this 14th day of April, 2011.

5

6

    Karen L. Strombom

7        United States Magistrate Judge